NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0008n.06
Filed: January 7, 2008

**No. 06-2557**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GARY D. MOSSOIAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DAIMLERCHRYSLER CORPORATION and | ) | MICHIGAN |
| ESIS, INC., | ) | |
| | ) | |
| Defendants-Appellees. | | |

**Before: SILER, MOORE, and GILMAN, Circuit Judges.**

**PER CURIAM.** Plaintiff Gary D. Mossoian appeals the district court's judgment in favor of Defendants DaimlerChrysler Corporation and ESIS, Inc. (collectively "DC"),[1] holding that Mossoian is not entitled to long-term disability ("LTD") benefits as governed by the Employee Retirement Income Security Act ("ERISA"). Mossoian argues that the district court (1) misapplied the arbitrary or capricious standard of review, (2) erroneously found that he had a "full and fair review," and (3) should have found that he was "totally disabled." Because DC's decision to deny him LTD benefits was not arbitrary or capricious, we AFFIRM.

**BACKGROUND**

---

[1]ESIS is the third-party administrator of the Daimler Chrysler plan. As the district court did in its memorandum, we will refer to DaimlerChrysler Corporation and ESIS, Inc. as "DC" for the sake of simplicity.

In November 1988, Mossoian fell from a ladder at DC and injured his left knee. In 1997, he returned to work and was assigned to work in an oily area, where he later slipped and fell. DC placed him on short-term disability under the Disability Absence Program ("DAP"). His DAP benefits terminated in 1998, and he then began receiving LTD benefits. To be considered "totally disabled," and thus eligible for LTD benefits under the plan, the employee must demonstrate that after the first 24 months of disability the employee is "unable to engage in regular employment or occupation with the Corporation" due to "disease or injury." The employee must furnish proof of continuance of the disability at reasonable intervals.

In February 2004, DC informed Mossoian that it was reviewing his LTD claim and needed his medical information. He submitted a "Disability Attending Physician's Statement" from his treating physician, which indicated that he suffered from chronic left knee pain and concluded that he could return to work with restrictions.[2] On June 1, 2004, DC requested additional information regarding his medical condition. On June 18, after he failed to provide the requested additional information, DC terminated his LTD benefits "based on information provided by [his] treating Physician." Although it had already terminated his LTD benefits, DC directed him to submit to an independent medical examination ("IME"). Dr. Shrirang Lele conducted the IME and concluded that Mossoian's back and left knee were "functionally normal" and that he could return to work without restrictions. Dr. Lele represented that he was board certified in orthopedic surgery when, in fact, he was not board certified.

---

[2]The restrictions were no lifting more than 20 pounds, no climbing, bending or squatting, four hours sitting and four hours standing a day, and no more than 40 hours of work per week in a non-slippery environment.

Mossoian appealed the denial of his LTD benefits. DC upheld the denial of LTD benefits, finding that he was able to work. Mossoian filed suit in state court and DC removed the action to federal court under ERISA. The district court reviewed the denial of LTD benefits under the arbitrary or capricious standard and upheld DC's denial of LTD benefits.

**ANALYSIS**

We review de novo the decision of the district court granting judgment based on the administrative record and apply the same legal standard as the district court, which was the arbitrary or capricious standard. *Glenn v. Metlife*, 461 F.3d 660, 665-66 (6th Cir. 2006).

*Application of Standard of Review*

First, Mossoian claims that the district court misapplied the arbitrary or capricious standard of review because it did not properly consider or discuss the conflict of interest. Whenever, as here, the plan administrator responsible for paying benefits is authorized to decide whether an employee is eligible for benefits, there is an apparent conflict of interest that must be taken into consideration in the district court's analysis. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Glenn*, 461 F.3d at 666. *Glenn* requires a discussion of the conflict of interest. *Id.*

The district court sufficiently considered and discussed the conflict of interest. It recognized the apparent conflict of interest and concluded that the medical evidence did not establish disability under the terms of the plan. It also analyzed and rejected Mossoian's arguments that DC and Dr. Lele were biased. In doing so, it concluded that even if there were problems with Dr. Lele's credentials, no evidence in the administrative record indicated that DC was aware of them. Furthermore, the court considered the fact that Mossoian's own doctors stated that he was capable

of working, albeit with restrictions.  The district court's discussion of the conflict of interest was sufficient under *Glenn.*

***Full and Fair Review***

Second, Mossoian claims that he was denied a "full and fair review" when DC terminated his LTD benefits.  In support of this argument, he points to Dr. Lele's lack of board certification and misrepresentation of his credentials and he argues that DC manipulated the administrative record. 29 C.F.R. § 2560.503-1(h)(1) mandates a "full and fair review" of a claim after an employee receives an adverse benefit determination.  29 C.F.R. § 2560.503-1(h)(3)(iii) states in part that the plan administrator "shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  29 C.F.R. § 2560.503-1(m)(7) defines "health care professional" to mean "a physician or other health care professional licensed, accredited, or certified to perform specified health services consistent with state law." Michigan law requires physicians to have a license to practice medicine.  Mich. Comp. Laws Ann. § 333.17011.  Mossoian does not dispute that Dr. Lele was licensed to practice medicine in Michigan.

Dr. Lele's misrepresentation of his credentials did not make DC's decision arbitrary or capricious under the circumstances.  DC initially decided to terminate Mossoian's LTD benefits on June 18, 2004, based on information provided by his own physician, long before Dr. Lele conducted the IME on August 10, 2004.  DC directed Mossoian to submit to the IME after he failed to provide medical information that DC had requested.  Moreover, Dr. Lele's report was very detailed and indicated that he conducted a thorough physical examination and review of Mossoian's medical

records.[3]  Dr. Lele's report is much more detailed than the conclusory notes provided by Mossoian's physicians.  We find no evidence that DC manipulated the administrative record.

***Totally Disabled***

Finally, Mossoian argues that he is "totally disabled" within the meaning of the plan because he is incapable of engaging in regular employment with DC.  In support of this argument, he claims that the administrative record reveals that he was incapable of performing work with DC consistent with his physician-imposed work restrictions and that the fact that there is no available work at DC establishes that he is "totally disabled" under the plan.  However, the availability of work at DC and the entitlement to LTD benefits are not the same.  To be "totally disabled," he must be unable to work because of "disease or injury," not because there is no position available for him at DC.  The lack of a position could be based on any number of reasons other than incompatibility with his restrictions, including DC's business circumstances.[4]  DC's decision to lay him off because there was no position available is not conclusive evidence that he was unable to work because of "disease or injury."  Thus, DC's decision to deny him LTD benefits was not arbitrary or capricious.

AFFIRMED.

---

[3]The IME report indicated that Mossoian did not complain of pain when attention was directed away from him and his left knee was palpated.

[4]Mossoian argues that the district court improperly took judicial notice of the availability of jobs at DC that he could perform consistent with his work restrictions.  However, the district court did not take judicial notice of this alleged fact.  Counsel for DC requested that the district court take judicial notice, but the record does not indicate that the district court did so.